# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IFC CREDIT CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TISSUE PRODUCTS TECHNOLOGY ) <br> CORPORATION, ET AL., ) <br> ) <br> Defendants. ) | CASE NO. 07 C 4351 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on three motions for summary judgment, filed by Plaintiff IFC Credit Corporation [51], Defendants Eco-Fibre, Inc. and Oconto Falls Tissue, Inc. [69], and Defendant Spirit Construction Services, Inc. [73], as well as a motion to strike [82] filed by Plaintiff IFC. For the following reasons, the Court grants Defendants' motions for summary judgment [69 and 73] and denies Plaintiff's motion for summary judgment [51] as well as Plaintiff's motion to strike [82].

## I.  Motion to Strike

A party that wishes to argue that portions of an opposing party's statement of facts contain errors or are inadmissible on evidentiary grounds may file a motion to strike those portions of the statement. *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997). "Pleadings that do not conform with the local rules may be stricken at the discretion of the court." *Id*. at 640 (citing *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990)); *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985); *Graham v. Security Sav. & Loan*, 125 F.R.D. 687, 688-89 (N.D. Ind. 1989), *aff'd*, 914 F.2d 909 (7th Cir. 1990)). Indeed, it is the function of the Court, with or without a motion to strike, to review carefully both statements of

material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement. See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 920 n.1 (N.D. Ind. 2004). The Court is capable of redacting the statement of facts and disregarding interpretation or analysis of the facts, or unfounded assertions of fact found in the statement. The Court's scrutiny of material statements of facts applies equally to the party seeking summary judgment and the party opposing it.

For example, testimony must be based on personal knowledge. See, *e.g., Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.,* 155 F.3d 883, 888 (7th Cir. 1998) (testimony "that was necessarily speculative and lacking in foundation * * * is insufficient"); Fed. R. Civ. P. 56(e). In addition, although the evidence supporting a factual contention need not be admissible itself, it must represent admissible evidence. By way of illustration, a deposition transcript usually is not admissible at trial but (obviously) may be used in support of summary judgment; however, a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition. See *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions * * * are admissible in summary judgment proceedings to establish the truth of what is attested or deposed").

The Court need not rule on the particulars of IFC's motion to strike because any statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, are irrelevant, or are not supported by evidence in the

record will not be considered by the Court in ruling on the summary judgment motions. Any paragraph or fact that is not supported by record evidence will be disregarded. Indeed, the Court has not relied on any evidence as to which the admissibility is disputed in its disposition of the motions.

Consistent with the discussion above, the Court denies IFC's motions to strike [82] and will rely only on material statements of fact which are both admissible and supported by the record compiled at the summary judgment stage. See Fed. R. Civ. P. 56(e); L.R. 56.1; see also *Davis v. Elec. Ins. Trs.*, 519 F. Supp. 2d 834, 836 (N.D. Ill. 2007); *Lawrence v. Bd. of Election Com'rs of City of Chicago*, 524 F. Supp. 2d 1011, 1014 (N.D. Ill. 2007).

## II. Background

### A. Standard

The Court takes the relevant facts from the parties' respective Local Rule 56.1 ("L.R. 56.1") statements. The Court resolves all genuine factual ambiguities in Plaintiff's favor (see *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004)), and takes no position on whose version of disputed factual matters is correct. See, *e.g.*, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (stressing that on summary judgment, courts must look "at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true").

L.R. 56.1 requires that statements of facts contain allegations of material fact and that those allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See*, e.g., Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153

F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). As noted above, where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See, *e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Finally, the Court disregards any additional statements of fact contained in a party's response brief rather than in its statement of additional facts. See, *e.g., Malec,* 191 F.R.D. at 584 (citing *Midwest Imports,* 71 F.3d at l317).

**B.     Facts**

Plaintiff IFC is a national equipment leasing and financing company that primarily provides lease-financing for capital equipment to commercial and industrial entities. IFC provided lease-financing to Defendants Tissue Products Technology Corporation ("TPTC"), Eco-Fibre, Inc., and Partners Concepts Development, Inc. ("PCDI") over a period of several years. Defendant Ronald H. Van Den Heuvel guaranteed the Defendants' lease obligations. Van Den Heuvel is an officer and director of PCDI and, with his wife or through an entity that he controls, owns eighty-three percent of PCDI.[1] PCDI is a holding company, and owns the stock of Tissue Products Technology Corporation ("TPTC") and Defendant Eco-Fibre, Inc, a company that converts waste paper into market grade, de-inked pulp. TPTC also is a holding company,

---

[1] Van Den Heuvel and his wife own fifty-six perfect of PCDI; however, another entity, also controlled by Van Den Heuvel, owns the other twenty-seven percent of PCDI, for a total of eight-three percent ownership.

4

and owns the stock of Oconto Falls Tissue, Inc., which owned and operated a paper mill. IFC's dealings with these Defendants (collectively referred to as the "RVDH Defendants") involved the purchase-and-lease-back of industrial equipment and fixtures, and included the financing of a major part of Oconto Falls' manufacturing plant. In 2006, Defendants Eco-Fibre and TPTC possessed sixteen (16) "after dryers,"[2] owned by IFC pursuant to a sale and lease-back.[3]

In August 2006, IFC filed a lawsuit in this district against TPTC, Eco-Fibre, PCDI, Oconto Falls, and Ronald H. Van Den Heuvel (the "RVDH Defendants"), asserting breaches of prior finance leases.[4] On April 13, 2007, IFC and the RVDH Defendants entered into a settlement agreement, effective March 28, 2007, resolving all claims then pending.[5] The RVDH Defendants paid an initial settlement of $20 million to IFC at the time the agreement was executed. According to IFC's statement of facts, "TPTC and PCDI were required to pay the balance of the Total Settlement Amount – $3.4 million – in ten (10) monthly installments." SOF ¶ 2. TPTC and PCDI did not make any of the ten monthly payments.

In connection with the settlement agreement, on or about December 22, 2006, PCDI and TPTC entered into a master lease agreement (No. 801109) with IFC, pursuant to which IFC leased to PCDI and TPTC nine of the after dryers previously leased under an earlier agreement. The seven after dryers that remained in the possession of TPTC and PCDI, but which were not covered by the No. 801109 lease, were deemed to be bailment property, with the RVDH

---

[2] After dryers are used to help convert pulp into paper products.

[3] These after dryers had been sold to IFC by PCDI several years earlier, and then leased back to PCDI as part of an equipment financing by IFC.

[4] This lawsuit was consolidated with a lawsuit filed by one of IFC's lending partners, George Washington Savings Bank, which had sued the RVDH Defendants in their capacity as the assignee of IFC's interests in the underlying lease and lease schedules.

[5] Rather than repeat itself, the Court will refer generally to the various contract provisions in this section and then set forth the specific language from the various agreements in the analysis section of the opinion, as the precise language of the contract is critical to the disposition of this matter.

Defendants retaining possession of the equipment not as lessee but as IFC's bailee. According to the settlement agreement, the bailment would be terminated immediately without notice upon a default by PCDI or TPTC of the No. 801109 lease. In his affidavit, Van Den Heuvel testified that "[t]he only company that is in possession of and controls in any way the 16 afterdryers at issue in this lawsuit is PCDI" and that "Oconto Falls and Eco-Fibre do not possess or control the sixteen (16) afterdryers at issue in this lawsuit."

On April 18, 2007, IFC loaned TPTC and PCDI an additional $440,000.00. The parties executed a master amendment agreement to the No. 801109 lease, and a tenth lease schedule was executed. In addition, as part of the settlement agreement, TPTC and PCDI executed a continuing pledge agreement, dated March 28, 2007. Pursuant to the pledge agreement, TPTC and PCDI pledged and assigned their right to receive, and interest in, payments that they were to receive from Defendant Spirit Construction Services, Inc. in connection with four construction projects, known as the "EPC" contracts. TPTC and PCDI represented to IFC that they had been engaged as sub-contractors by Spirit Construction, a general and mechanical contractor engaged in heavy industrial construction.[6] Steve Van Den Heuvel, Ron's brother, is the president of Spirit Construction. Spirit, with the help of TPTC and PCDI, was to construct three new paper mills and also rebuild the Oconto Falls paper mill. Spirit Construction provided IFC with written representations regarding TPTC's and PCDI's engagement as subcontractors in connection with the EPC contracts. TPTC and PCDI pledged and assigned "any and all rights to payment of up to $390,222.00 per month, and in the aggregate the amount of $3,902,220.00." However, to date, Spirit has not entered into any subcontractor agreements with either TPTC or PCDI.

---

[6] Spirit was to build three new paper mills and rebuild the Oconto Falls paper mill.

On June 25, 2007, IFC sent a letter to Defendants, notifying them that PCDI and TPTC were in default of their obligations under the master lease. The notice requested that Defendants pay the balance of the rental lease payments immediately, in accordance with paragraph 17 of the master lease.[7] In response to the default notice, Ron Van Den Heuvel sent a letter to IFC requesting an additional five weeks to make the rental payments. On June 29, 2007, IFC rejected Van Den Heuvel's proposal and again demanded immediate payment of the delinquent lease rental payments. IFC has not received any of the monthly payments due under the settlement agreement, nor has it received any of the lease rental payments due under the master lease, as amended. IFC has fully performed its obligations under the No. 801109 lease.

In August of 2007, IFC filed a four-count complaint against the RVDH Defendants and Spirit Construction. Count I asserts a claim for breach of the settlement agreement against all Defendants, except Spirit Construction. Count II asserts a claim for breach of the No. 801109 lease against PCDI and TPTC. Count III asserts a claim against Ron Van Den Heuvel on his personal guaranty. Count IV seeks injunctive relief, asking the Court to order TPTC and PCDI, as well as those acting in concert with them, to surrender to IFC the sixteen after dryers and related equipment in their possession and control. It also requests an order prohibiting Spirit Construction from paying, transferring, or assigning any money to TPTC or PCDI until IFC's judgment against TPTC and PCDI is satisfied in full.

On August 13, 2007, the Court entered an agreed order of judgment against Defendants Ronald Van Den Heuvel, TPTC, and PCDI in the amount of $5.3 million. The entry of the final

---

[7] Pursuant to paragraph 17 of the No. 801109 lease, IFC has the right upon the lessees default to "(b) declare all sums due and to become hereunder immediately due and payable * * * (d) without terminating the Lease, to directly or by its agent, and without notice and liability or legal process enter upon any premises where the Equipment may be located, take possession of such Equipment, and either store it on said premises without charge or remove same * * * (e) without terminating the Lease, sell any or all of the Equipment at public or private sale, with or without notice to Lessee * * * *"

7

judgment against Van Den Heuvel, TPTC, and PCDI leaves only Count I as to Eco-Fibre and Oconto Falls and Count IV as to Eco-Fibre, Oconto Falls, and Spirit Construction. Both IFC as well as the remaining Defendants have moved for summary judgment on all remaining counts.

## III. Analysis

### A. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position

will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

**B. Claims against Eco-Fibre and Oconto Falls**

*1. Count I*

There is no dispute that Eco-Fibre and Oconto Falls are parties to the April 2007 settlement agreement. What the parties dispute is whether Eco-Fibre's and Oconto Falls' obligations under the settlement were satisfied by the initial settlement payment of $20 million to IFC at the time the agreement was executed, or whether they, along with the remaining RVDH Defendants, are liable for the balance ($3.4 million) of the Total Settlement Amount.

Under Illinois law, "[c]onstruing the language employed in a contract is a matter of law appropriate for summary judgment * * * unless the contract is ambiguous." *Burris v. Memorial Consultants, Inc.*, 224 Ill. App. 3d 653, 656 (3d Dist. 1992); see also *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 129 (2005) ("As a general rule, the construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law"). In contract interpretation cases, Illinois generally adheres to the "four corners" rule, which provides that "'an agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.'" *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999) (quoting *Western Ill. Oil Co. v. Thompson*, 186 N.E.2d 285, 287 (Ill. 1962)); see also *In re Marriage of Best*, 369 Ill. App. 3d 254, 266 (2d Dist. 2006) ("A court's primary goal in the construction of a contract is to decide and give effect to the intent of the parties as it is expressed through the words of the contract"). "A contract is ambiguous only if it is reasonably susceptible of different constructions; it is not

9

ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; contracts are not rendered ambiguous merely because the parties do not agree upon their proper construction." *American States Ins. Co. v. A.J. Maggio Co., Inc*., 593 N.E.2d 1083, 1086 (Ill. App. Ct. 2d Dist. 1992).

IFC contends that Defendants Eco-Fibre and Oconto Falls, as two of the five RVDH Entities, are liable to IFC for the remaining $3.4 million due under the settlement agreement. In support of its position, IFC relies on paragraphs 1(a), 7, and 14 of the settlement agreement. Paragraph 1, entitled "Settlement Amount To Be Paid by RVDH Entities," has subsection (a), "Settlement Amount," which reads as follows: "To resolve all claims and disputes * * * the RVDH Entities shall pay the total sum of twenty three million, four hundred thousand dollars and no cents ($23,400,000.00) (the "Total Settlement Amount"), to IFC as settlement in full of IFC's claim in the GWSB and IFC Lawsuits * * *." Since Eco-Fibre and Oconto Falls are included in the definition of the RVDH Entities found in the opening paragraph of the settlement agreement, IFC contends that, by the plain language of the agreement, Eco-Fibre and Oconto Falls, as RVDH Entities, agreed to pay IFC $23.4 million to settle all the claims. Although the words "joint and several liability" are not used in the agreement, IFC argues that Eco-Fibre and Oconto Falls are jointly and severally liable for the total settlement amount, including the remaining $3.4 million.

Paragraph 7 states,

At such time as IFC is paid the Total Settlement Amount, as adjusted, all of IFC's rights and all of the RVDH Entities' obligations under this Agreement, the 801109 Afterdryer Lease Agreement, Van Den Heuvel's Guaranty of the 801109 Afterdryer Lease Agreement, the Continuing Pledge Agreement (including the pledge of PCDI Stock) shall cease, the terms and conditions of each of the foregoing agreements having been performed in full by the RVDH Entities, and

> IFC, on behalf of itself and any remaining funding sources by or through it, shall be required to take all actions and execute all documents in order to effect a full termination of the foregoing agreements and a full and final release of any interests IFC might have in property or collateral under the foregoing agreements.

According to IFC, if the parties had intended to distinguish between the obligations of the various Defendants, paragraph 7 also should have distinguished between Eco-Fibre and Oconto Falls, on the one hand, and the other RVDH Entities on the other, with regard to the satisfaction of their respective obligations. Since paragraph 7 makes no such distinction, IFC argues that Eco-Fibre and Oconto Falls were not released from their obligations to IFC upon payment of the $20 million.

Finally, IFC points to language in paragraph 14, entitled "Failure to Pay Settlement Amount in Full," which states: "In the event the RVDH Entities fail to make the Initial Settlement Payment or any of the Series Payments on or before their due date, the RVDH Entities shall be in default of this Agreement." IFC argues that the parties, in paragraph 14, clearly intended that all of the RVDH Entities, including Eco-Fibre and Oconto Falls, be obliged to pay the total settlement amount to IFC, and that the failure of any of the RVDH Entities to pay the total settlement amount, including the series payments, would be a default by each of the RVDH Entities. Reading paragraph 14 with paragraphs 1 and 7, IFC concludes that even if the obligation to make the series payments fell primarily to TPTC and PCDI pursuant to paragraph 1(d), the obligation to make those payments and pay the total settlement amount was shared by all of the RVDH Entities.

As Defendants note, "[i]t is well-established that 'where a document contains both general and specific provisions relating to the same subject, the specific provision is controlling.'" *Preuter v. State Officers Electoral Board*, 779 N.E.2d 322, 332 (Ill. App. Ct. 2002) (quoting *Continental Casualty Co. v. Polk Bros., Inc*., 457 N.E.2d 1271, 1274 (Ill. App.

11

Ct. 1983)). Thus, while the provisions cited by IFC certainly are relevant, the Court also must look at the other specific provisions of agreement. For instance, while paragraph 1(c) provides that the RVDH Entities were required to make an "Initial Settlement Payment" of $20 million, paragraph 1(d), entitled "Payment of $3.4 Million in Installments," states that "*TPTC and PCDI* shall pay to IFC $3.4 million in ten (10) equal and consecutive monthly payments of $340,000 each (the "Series Payments"), the first such payment to be made in accordance with the terms of the 801109 Afterdryer Lease."[8] (emphasis added.) Thus, while a general provision – paragraph 1(a) – states that the RVDH Entities are required to pay IFC a total of 23.4 million, the two specific provisions found in paragraphs 1(c) and (d) set forth the differing obligations of the RVDH Entities.[9]

According to Defendants, paragraph 7 also undermines, rather than supports, IFC's position regarding any continuing liability for Oconto Falls and Eco-Fibre. As stated above, paragraph 7 provides that "[a]t such time as IFC is paid the Total Settlement Amount, as adjusted, all of IFC's rights and all of the RVDH Entities' obligations under this Agreement, the 801109 Afterdryer Lease Agreement, Van Den Heuvel's Guaranty of the 801109 Afterdryer Lease Agreement, the Continuing Pledge Agreement (including the pledge of PCDI Stock) shall cease, the terms and conditions of each of the foregoing agreements having been performed in full by the RVDH Entities * * *." According to Defendants, this paragraph merely clarifies the obvious: when everyone does what they are supposed to do under the various agreements, the

---

[8] TPTC and PCDI, but not Oconto Falls and Eco-Fibre, are parties to the No. 801109 lease.

[9] It is worth noting that IFC, in its summary judgment motion, presented the facts as follows: "Defendants paid IFC the Initial Settlement Amount of $20 million on or about April 17, 2007, pursuant to the agreement, and the remaining $3.4 million was required to be paid by TPTC and PCDI * * *." Pl. MSJ at 6.

parties no longer have any obligations under such agreements. Full satisfaction occurs when the various obligations under the various agreements are performed.[10]

Defendants next point to paragraphs 10 and 11, which they contend are the specific release provisions. Paragraph 10, entitled "Mutual Releases," has two parts. Paragraph 10(a) is a general release in which IFC releases all of the RVDH Entities from any liability, and paragraph 10(b) sets forth another general release in which the RVDH Entities release IFC from any future liability. Then, in paragraph 11, entitled "Limitations on Mutual Releases," IFC carves out the claims that will survive the settlement agreement. Paragraph 11 provides that the general releases in paragraph 10 "shall not be deemed to release or modify the rights and obligations of IFC and the RVDH Entities secured and incurred under and pursuant to this Agreement and/or the documents executed and exchanged by IFC and the RVDH Entities in connection with this Agreement including [the 801109 Afterdryer Lease Agreement consisting of Lease Agreement No. 801109 and Lease Schedules Nos. [001 through 009], the Personal guaranty of Ron Van Den Heuvel of the 801109 Afterdryer Lease Agreement, and the Continuing Pledge Agreement (the "Retained Rights and Obligations")]." Paragraph 11 clarifies that the general release in paragraph 10 did not extinguish any continuing rights and obligations created in or in connection with the settlement agreement, with the relevant obligations being those contained in the No. 801109 lease, the personal guaranty of Ron Van Den Heuvel, and the continuing pledge agreement. Defendants read paragraphs 10 and 11 together to say that all five of the RVDH Entities were released from any claims by IFC (paragraph 10) and a particular RVDH entity only would have continuing obligations to IFC if it was or became a party to one of

---

[10] In addition to the settlement agreement, to which Eco-Fibre and Oconto Falls are parties, these agreements include the No. 801109 lease, Van Den Heuvel's guaranty, and the continuing pledge agreement, to which Eco-Fibre and Oconto Falls are not parties.

the specified continuing obligations. Defendants then point out, once again, that neither Oconto Falls nor Eco-Fibre were parties to any of those continuing obligation agreements and therefore they remained fully released from any claims by IFC by virtue of the general release contained in paragraph 10(a).

Urging the Court to consider the settlement agreement in its entirety, Defendants argue that IFC attempts to take general references regarding a group of entities (the RVDH Defendants) out of context without considering specific provisions relating to the rights and obligations of individual parties and without considering the agreement as a whole. Having considered the settlement agreement as a whole, as required under Illinois law (see *One Hundred South Wacker Drive, Inc. v. Szabo Food Serv., Inc.*, 326 N.E.2d 400, (Ill. 1975) ("[I]t is the law in Illinois that the proper construction to be given to a [contract] is to be determined by consideration of the instrument as a whole")), the Court concludes that Eco-Fibre and Oconto Falls are not liable for the remaining $3.4 million settlement payment. By the plain language of the agreement, *TPTC and PCDI* were to pay the $3.4 million in ten equal "Series Payments" of $340,000. Moreover, they were to make "the first such payment" in accordance with the terms of the No. 801109 lease, to which only TPTC and PCDI (as well as IFC) were parties.

Bolstering this conclusion is the fact that the parties did not include any language in the settlement agreement to make all of the RVDH Entities jointly and severally liable for the remaining $3.4 million. "A court will not add another term about which an agreement is silent; no word can be added to or taken from the agreement to change the plain meaning of the parties as expressed therein." *American States Ins. Co. v. A.J. Maggio Co., Inc*., 593 N.E.2d 1083, 1086 (Ill. App. Ct. 2d Dist. 1992). If the parties had intended joint and several liability for the RVDH Entities, they easily could have indicated it as an express term in the contract. See *Klemp v.*

*Hergott Group, Inc.*, 641 N.E.2d 957, 962 (Ill. App. Ct. 1st Dist. 1994) ("There is a strong presumption against provisions that easily could have been included in the contract but were not."). It is not the Court's role to supply missing terms in this kind of situation. See *id.* ("A court will not add another term about which an agreement is silent."). In fact, in the No. 801109 lease, it expressly states in at least two places that PCDI and TPTC are "jointly and severally" liable as co-lessees. It does not compute that IFC, a sophisticated, nation leasing company, would include the term in one agreement and not another agreement, unless the parties intended that result.

Based on the language included by the parties in the settlement agreement, the Court determines that Eco-Fibre and Oconto Falls met their obligations under the agreement by virtue of the initial $20 million payment. The express language of the agreement supports Defendants' position that the parties intended that only TPTC and PCDI pay the remaining $3.4 million due under the settlement agreement pursuant to the "Series Payments." Accordingly, the Court grants summary judgment in favor of Eco-Fibre and Octonto Falls and against IFC on Count I.

    2.    *Count IV*

In Count IV of its complaint, IFC seeks an order requiring TPTC and PCDI, as well as those acting in concert with them, to surrender to IFC the sixteen after dryers and related equipment in their possession and control. In its reply brief, IFC "acknowledges that Count IV of its Complaint is primarily directed at TPTC and PCDI as the lessees under the subject Master Lease No. 801109," but contends that at least seven of the after dryers remain in the possession of all of the RVDH Defendants. They also argue that "by the very close legal and familial relationship of the RVDH Defendants and their owners, it is reasonable to expect that Eco-Fibre and Oconto Falls would assist TPTC and PCDI in any attempt to handicap IFC's efforts to locate

and repossess all sixteen (16) Afterdryers or otherwise fail to cooperate with IFC in repossessing the Afterdryers."

In response, Eco-Fibre and Oconto Falls have submitted the affidavit of Ron Van Den Heuvel, the president of both companies (as well as the president of PCDI and TPTC), who attests that "[t]he only company that is in possession of and controls in any way the 16 afterdryers at issue in this lawsuit is PCDI." He also states that "Oconto Falls and Eco-Fibre do not possess nor do they control the sixteen (16) afterdryers at issue in this lawsuit." IFC asserts, without citation to legal authority or evidentiary support, that the Court should issue an injunction because Eco-Fibre and Oconto Falls "*may* have actual possession and control of certain of the Afterdryers, and because those companies are *likely* to act in concert with the other RVDH Entities in refusing to turnover all of IFC's equipment." IFC Reply Br. at 8 (emphasis added). At the summary judgment stage, a party must rely on actual facts in the record, not speculation and innuendo. See *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (finding that the nonmoving party is not entitled to the benefit of "inferences that are supported by only speculation or conjecture"); *Davis v. Carter*, 452 F.3d 686, 697 (7th Cir. 2006) ("when the evidence provides for only speculation or guessing, summary judgment is appropriate"). Here, in the face of undisputed evidence that "Oconto Falls and Eco-Fibre do not possess nor do they control the sixteen (16) after dryers at issue in this lawsuit," IFC cannot rest on a hunch that Eco-Fibre or Oconto Falls "may" have the after dryers or are "likely" to do something to bar IFC's recovery of the dryers. IFC could have conducted discovery to determine the exact location of the after dryers, but, based on the evidence before the Court, it appears that IFC did not do so. Accordingly, the Court has before it Van Den Heuvel's sworn affidavit and IFC's supposition, which is insufficient to create a genuine issue of material fact. Because the record

supports the conclusion that Eco-Fibre or Oconto Falls do not possess or control the after dryers at issue, summary judgment in favor of Eco-Fibre and Oconto Falls is appropriate on Count IV.[11]

### C. Claim against Spirit Construction

In Count IV, IFC also contends that the written representations made by PCDI, TPTC, and Spirit Construction in the continuing pledge agreement entitle IFC to a permanent injunction prohibiting Spirit from paying, transferring, or assigning any money to TPTC or PCDI until IFC's judgment against TPTC and PCDI is satisfied in full. In its reply brief, IFC clarified that it "seeks injunction relief against Spirit Construction only so far as Spirit Construction is or becomes indebted to the other Defendants." Spirit is not a party to the prior settlement agreement between IFC and the RVDH Defendants, the No. 801109 lease, or the personal guaranty signed by Ron Van Den Heuvel. It is named as a defendant only in Count IV.

The only claim that IFC has against Spirit is a contingent one, arising out of the continuing pledge agreement. Essentially, if TPTC and PCDI earn money pursuant to potential subcontractor agreements with Spirit, then Spirit would be required to pay that money to IFC (instead of TPTC and PCDI) until TPTC and PCDI fulfill their obligations to IFC. However, Spirit does not have a duty to pay IFC unless it hires PCDI or TPTC as a subcontractor, and, even then, IFC would not have an injury in fact unless Spirit breached its obligation to pay IFC. Presently, a breach has not occurred nor has IFC presented evidence that a breach is likely to occur in the near future. None of the prerequisites for payment of funds by Spirit to IFC has occurred yet; thus, whatever potential future injury IFC may have is too speculative. See *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC)*, 528 U.S. 167, 180-81 (2000)

---

[11] Defendants' argument that IFC has an adequate legal remedy is unpersuasive. Specific performance is an exceptional remedy; however, IFC seeks the return of after dryers that *it owns*. Had IFC presented evidence that Eco-Fibre and Oconto Falls actually possessed or controlled the dryers, the Court would have viewed a request to return the equipment as reasonable in light of IFC's contentions that Defendants have failed to pay rent on the equipment.

(finding that to satisfy Article III's standing requirements, a plaintiff must show that it has suffered an "injury in fact" that is "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical"). While IFC may be wary of Spirit because of its "corporate" and "familial" relationships with the other Defendants, these concerns do not dictate the issuance of injunctive relief at this time on this record. Plaintiff simply does not have standing at this time to bring a claim against Spirit.

### III. Conclusion

For the reasons stated above, the Court grants Defendants' motions for summary judgment [69 and 73] and denies Plaintiff's motion for summary judgment [51] as well as Plaintiff's motion to strike [82].

Dated: March 31, 2009

_____
Robert M. Dow, Jr.
United States District Judge